# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. CR415-100 |
| | ) | |
| PATRICK ROBERT GODWIN-PAINTER | ) | |

## REPORT AND RECOMMENDATION

Defendant Patrick Godwin-Painter is charged with (1) violating 18 U.S.C. § 875(d) by using interstate communications with the intent to extort money from M.T. (doc. 18 at 1), and (2) Hobbs Act extortion under 18 U.S.C. § 1951 by attempting to obtain the property of M.T., with M.T's consent induced by the wrongful use of force, violence, or fear. Doc. 18 at 2. He moves to dismiss the indictment, arguing that it is insufficient on its face to state a criminal offense. Docs. 40 & 44.

I. BACKGROUND

A. Defendant's Version of Events

Relying upon the FBI's criminal complaint used to obtain defendant's arrest warrant (doc. 3), Godwin-Painter recites a more detailed story than the one illuminated in the indictment. Years ago, he

hired M.T. to represent him in a personal injury suit. Doc. 44 at 2. M.T. later settled the case without defendant's permission. *Id.* Defendant sued M.T. for legal malpractice and, during that suit, deposed him. *Id.*

Godwin-Painter believed that M.T. "lied during the deposition." *Id.* at 3. He then communicated directly with M.T. and threatened to reveal M.T's "perjury and other damaging information" to the media, bar association, and others unless M.T. agreed to pay defendant a large sum of money. *Id.* Central to his arguments, however, and as noted in the criminal complaint, defendant's *quid pro quo* was not merely "you pay up and I don't ruin you." He also offered to dismiss his malpractice case against M.T. *Id.* at 3; doc. 3 at 2 ("During the course of the dinner meeting, [Godwin-]Painter told M.T. . . . he would drop the malpractice suit *and* provide M.T. with the information he intended to turn over to law enforcement" if M.T. paid him $8,000,000) (emphasis added).

B. **The Indictment**

The indictment is more bare-bones. Count I charges that:

On or about May 1, 2015, in Chatham County, [Georgia] . . . the defendant . . . knowingly transmitted in interstate commerce from the State of California to the State of Georgia, with intent to extort money from a person, M.T., a communication containing a threat to injure M.T.'s reputation, in that *the defendant demanded the payment of a substantial sum of money for his keeping silent about*

2

> *certain allegedly damaging information about M.T. of which he claimed to have knowledge,* in violation of Title 18, United States Code, Section 875(d).

Doc. 18 at 1 (emphasis added). Count II -- the only other count -- further charges that:

> Beginning on or about May 1, 2015, and continuing until May 8, 2015 . . . the defendant . . . did affect commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, section 1951, that is, Defendant attempted to obtain the property of M.T., with M.T.'s consent induced by the wrongful use of force, violence, and fear, including fear of economic loss, in violation of Title 18, United States Code, Section 1951.

*Id.* Neither count, obviously, includes any mention of defendant's offer to settle his malpractice case against M.T. in exchange for M.T.'s money.

## II. MOTIONS TO DISMISS

### A. Indictment Sufficiency Principles

"In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation. . . ." U.S. Const. amend. VI. The Federal Rules of Criminal Procedure implement that guarantee by requiring an indictment to set forth "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is sufficient under the Constitution and Rule 7(c)(1) if it sets forth the elements of

3

the offense in a manner that fairly informs the defendant of that which he is accused and "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see United States v. Lang*, 732 F.3d 1246, (11th Cir. 2013); *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992).

Where the criminal statute sets forth all the elements of the offense charged, an indictment is sufficient if it simply tracks the language of the statute. *Hamling*, 418 U.S. at 117; *United States v. Ramos*, 666 F.2d 469, 474 (11th Cir. 1982). Where the statutory language does not state all essential elements of the crime, however, the indictment must perform that role. *Russell v. United States*, 369 U.S. 749, 765 (1962). While an indictment should also set forth the "essential facts" of the charged offense, Fed. R. Crim. P. 7(c)(1), it is not necessary to recite all the evidence the government will present at trial to support the charges. *United States v. Lehder-Rivas*, 955 F.2d 1510, 1519 (11th Cir. 1992); *United States v. Martel*, 906 F.2d 555, 558 (11th Cir. 1990); *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978)[1] (indictments need not

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

4

"allege in detail the factual proof that would be relied upon to support the charges").

Perhaps most importantly, "'[t]he sufficiency of a criminal indictment is determined from its face,'" *United States v. Salman*, 378 F.3d 1266, 1268 n. 4 (11th Cir. 2004) (quoting *Critzer*, 951 F.2d at 307), and, "more specifically, the language used to charge the crimes." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006). Unsurprisingly, then, "'a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.'" *Id.* (quoting *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987)).

## B. Motion to Dismiss Count I

Looking to the Hobbs Act -- which defines "extortion" as obtaining another's property via "wrongful" use of a threat, 18 U.S.C. § 1951(b)(2) -- for inspiration, defendant first argues that "a case brought under 18 U.S.C. § 875(d) requires proof of extortion," which "requires proof of a 'wrongful' use of threatened force, violence, or fear." Doc. 40 at 7. Even assuming that's true, Count I still survives because requiring proof of wrongfulness to secure a conviction is not the same as saying that an indictment lacking the word "wrongful" is legally insufficient.

Recall that, at its core, an indictment's purpose is to set forth the elements of the crime in a way that gives a defendant notice of the offense of which he is accused. *See Hamling*, 418 U.S. at 117; *Lang*, 732 F.3d at 1247. And, further, that when statutory language includes all a crime's elements, an indictment which tracks that language is sufficient. *Hamling*, 418 U.S. at 117. *Hamling* is particularly instructive in demonstrating why Count I is sufficient. The defendants there argued that their indictment for mailing obscene materials "failed to give them adequate notice of the charges against them" because it lacked details explicating each prong of the Supreme Court's definition of obscenity.[2] *Id.* Instead, it simply accused defendants of mailing obscene materials, *id.*, much as defendant's indictment here states that he threatened M.T. with the intent to extort, but does not define extortion or threat. Doc. 18 at 1.

*Hamling* rejected that argument. It noted that "the word 'obscene,' as used in [the statute], is not merely a generic or descriptive

---

[2] In 1971, when the *Hamling* defendants were indicted, material was obscene if: "'(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value.'" *Hamling*, 418 U.S. at 99 (quoting *Roth v. United States*, 354 U.S. 476, 492 (1957)).

6

term, but a legal term of art." 418 U.S. at 118. Its "legal definition . . . does not change with each indictment," and, therefore, "it is a term sufficiently definite in legal meaning to give a defendant notice of the charge against him." *Id.* "Since the various component parts of the constitutional definition of obscenity need not be alleged in the indictment in order to establish its sufficiency, the indictment . . . was sufficient to adequately inform [defendants] of the charges against them." *Id.* at 119.

The same reasoning applies as to the words "threat" or "extort" used in the present indictment. Count I tracks 18 U.S.C. § 875(d)'s language precisely,[3] adding only that the "threat to injure" in this case was defendant's demand for "payment of a substantial sum of money for his keeping silent about certain allegedly damaging information about M.T. of which he claimed to have knowledge." Doc. 18 at 1. That's enough to put defendant on notice of the charge against him and thus save the indictment. Both "threat" and "extort" are, like "obscenity," legal terms whose judicially interpreted definitions are "sufficiently

---

[3] The statute makes it a crime for anyone "with intent to *extort* from any person . . . any money . . . [to] transmit[] in interstate . . . commerce any communication containing any *threat* to injure the property or reputation of the addressee." 18 U.S.C. § 875(d) (emphasis added).

7

definite in legal meaning to give a defendant notice of the charge against him." *Hamling*, 418 U.S. at 118. Including in the indictment any judicial gloss on § 875(d)'s terms, even if the government ultimately must prove that gloss to secure a conviction, is unnecessary.

The only other court to consider the precise issue presented here arrived at the same conclusion. In *United States v. Curley*, 2014 WL 199948 at * 4 (D. Me. Jan. 16, 2014), the indictment charged a violation of § 875(d) and tracked "in the words of the statute itself, all elements of the charge." *Id.* at * 3 (cites and quotes omitted). The defendant, like Godwin-Painter, argued that was insufficient because § 875(d) lacked a definition of extortion which, he contended, had to include the same "wrongful" component contested here. *Id.* The court disagreed, concluding that what "Curley is really arguing is that to be effective, an indictment [charging a § 875(d) violation] must state, as an element, the law as judicially pronounced." *Id.* at * 4. Even assuming § 875(d) includes a wrongfulness component, as *Curley* in fact did, "it stretches the point to conclude that a grand jury must expressly include . . . judicial interpretations of criminal statutes in . . . indictments on pain of dismissal." *Id.*; *see also United States v. Renteria*, 187 F. App'x 704, 706

(9th Cir. 2006) ("An indictment that follows the statutory language, and otherwise puts the accused on fair notice of all the implied elements of the charge, is not also required to incorporate judicial decisions that have interpreted that language.").

Nor do *United States v. Coss*, 677 F.3d 278 (6th Cir. 2012), and *United States v. Jackson*, 180 F.3d 55 (2d Cir. 1999) require a contrary result. *See* doc. 54 at 5 (citing both cases as support for defendant's § 875(d)-wrongfulness argument).[4] *Jackson* reversed a conviction under § 875(d) because the trial court refused to instruct the jury that "intent to extort" included wrongfulness. 180 F.3d at 70. But, unlike indictments, which serve to give notice of the offense charged,[5] jury instructions must reflect far more than just the bare elements of a crime, oftentimes the very judicial "gloss" that *Hamling* found unnecessary for indictments. *See Hamling*, 418 U.S. at 118. Hence, *Jackson* actually reinforces the conclusion that "intent to extort," absent the judicially interpreted definition of that phrase, alone creates a sufficient indictment charge.[6]

---

[4] The defendant in *Curley* relied heavily on *Jackson* as well. *See* 2014 WL 199948 at * 4.

[5] *See* Fed. R. Crim. P. 7(c)(1); *Lang*, 732 F.3d at 1246.

[6] The Court in *Curley* came to the same conclusion:

9

*Coss*, relying almost entirely on *Jackson*, examined the "intent to extort" element of § 875(d) on a motion to dismiss the indictment and held that provision "should be interpreted to criminalize only threats that are 'wrongful.'" 677 F.3d at 284. Although *Coss* found "that the indictment was sufficient" because it "alleged that the defendants acted 'with intent to extort and that the communications they used contained 'a wrongful threat to injure the reputation of the addressee,'" it had no occasion to consider an indictment, like the one here, lacking the latter but containing the former. *Id.* at 288. Indeed, *Coss* compared its indictment, which survived, to *United States v. Heller*, 579 F.2d 990, 999 (6th Cir. 1978), where the indictment failed to charge "intent to extort" and thus was "fatally defective." *Coss*, 677 F.3d at 288. In any event, to the extent that *Coss* can be read to require an § 875(d) indictment to

---

The persuasive force in the Second Circuit's *Jackson* opinion may well entitle Mr. Curley to a jury instruction, as Judge Hornby contemplates for § 875(b), that "[t]o act with intent to 'extort' means to act with the intent to obtain something of value from someone else, with that person's consent, but induced by the wrongful use of actual or threatened force, violence or fear." Hornby Instructions § 4.18.875. But the lack of an express mention of "wrongfulness" in the indictment—again, assuming that wrongfulness is a necessary predicate to an § 875(d) conviction—does not entitle Mr. Curley to have the indictment dismissed, because the use of statutory language in the charging document subsumes authoritative judicial interpretations of the statutory terms.

2014 WL 199948 at * 4.

contain the word "wrongful," the Court finds *Hamling* and *Curley* more persuasive (and in the case of *Hamling*, binding).

Because defendant's indictment tracks the language of the statute, which contains all elements of a § 875(d) charge, and sets forth "the essential facts" of the charged offense, Fed. R. Crim. P. 7(c)(1), his motion to dismiss (doc. 40) should be **DENIED**.

### C. Motion to Dismiss Counts I and II

Defendant also argues that both counts of the indictment must be dismissed because § 875(d) and the Hobbs Act "cannot be used when one side of civil litigation makes a threat against the other side in order to obtain a settlement or economic advantage." Doc. 44 at 5. Because defendant offered, in exchange for money, to drop his suit against M.T. and not take damaging information to the authorities, the conduct that the indictment charges, he contends, simply is not wrongful, so it cannot constitute a violation of either statute. *Id.* at 6. That argument would have legs if criminal complaints were incorporated into indictments.[7]

---

[7] Invoking the criminal complaint's alleged facts, defendant argues that his threats against M.T. cannot constitute extortion because he also offered to drop his malpractice suit in exchange for M.T.'s money. *See* doc. 44. *Coss* and *Jackson*, while not persuasive in this procedural context, assist that argument by making a strong case that: (1) § 875(d) extortionate threats must be wrongful to fall within that statute's reach, and (2) wrongful means the same thing as it does in the Hobbs Act.

11

But on the face of the indictment -- which is all the Court can consider at this stage, *see Critzer*, 951 F.2d at 307 -- the charges easily stand.

Nowhere does the indictment mention anything about defendant offering to dismiss his suit against M.T. in exchange for money. Instead, it alleges that "the defendant demanded the payment of a substantial sum of money for his keeping silent about certain allegedly damaging

---

*See* 18 U.S.C. § 1951(b)(2)); *Coss*, 677 F.3d at 284; *Jackson*, 180 F.3d at 70. Adding even more heft, *United States v. Pendergraft* makes clear that "wrongful" requires both a wrongful means and wrongful objective, and that threatening to file a lawsuit cannot be a wrongful means. 297 F.3d 1198, 1206 (11th Cir. 2002) (holding that Hobbs Act indictment failed as a matter of law to charge extortion where defendants threatened to expand parties and claims in existing lawsuit against county government based on fraudulent affidavits in order to incentivize settlement). Finally, and critically, the Court can discern no reason why *Pendergraft*'s animating logic -- that litigation behavior by a plaintiff, whether used as a stick (as in *Pendergraft*), or carrot (as here), cannot be "wrongful" for purposes of extortion -- should not extend to attempts to leverage settlement in a case using damaging information about the other party.

Admittedly, this case presents a somewhat different situation than *Pendergraft* because Godwin-Painter alleges that he threatened to go public with information about M.T. *and* offered to drop his malpractice suit in exchange for money, *see* doc. 44 at 1, as compared to the more typical situation, like *Pendergraft*, where a party makes a threat or offer (but not both) to induce action by the other side. *See, e.g.*, *Pendergraft*, 297 F.3d at 1206. That difference, however, does not undermine any of the policy rationales driving the decision in *Pendergraft* and applicable here. *See id.* at 1207 (reminding, as reasons why litigation threats should not be "wrongful" under the extortion statutes: (1) sanctions other than extortion prosecutions, such as civil malicious prosecution claims, are sufficient to deter "wrongful" litigation conduct; (2) extortion prosecutions create "yet another collateral way for litigants to attack one another;" and (3) no good cause exists to transform state common-law torts (*e.g.*, malicious prosecution) into federal crimes). But while Godwin-Painter may have a good argument, he does not have good timing; the only facts this Court can consider now are those alleged in the indictment, and that makes no mention of defendant's suit against M.T., just his threat to ruin M.T.'s reputation if M.T. failed to pay $8,000,000. Hence, his argument fails at this stage.

information about M.T." Doc. 18 at 1. There simply is no way to read that to include any connection to the malpractice suit defendant brought against M.T.

True, the criminal complaint briefly mentions defendant's offer to "drop the malpractice suit and provide M.T. with the information he intended to turn over the law enforcement" in exchange for $8,000,000. Doc. 3 at 2. But the complaint is not the indictment, *see United States v. Clemens*, 2011 WL 1540150 at * 1 n. 1 (D. Mass. Apr. 22, 2011) (considering arguments on a motion to dismiss an indictment "to the extent that they are relevant to the *indictment*, which superseded the *complaint*") (emphasis in original), and cannot be considered on a motion to dismiss. *See Salman*, 378 F.3d at 1268 n. 4. In essence, defendant asks the Court to determine "facts that [remain to be] developed at trial.'" *Sharpe*, 438 F.3d at 1263. This the Court simply cannot do.

Anticipating a similar argument from the government, defendant argues that "a decision before trial is generally proper" when "the alleged infirmity in the prosecution is essentially one of law." Doc. 44 at 15. And, defendant contends, whether his threat to M.T. was wrongful is a question of law the Court can address at this stage. *Id.* True enough,

so far as that question is one of law (it is). But the facts that the Court looks to in answering any legal question about the indictment are those on the face of *the indictment*. And that document says nothing about the litigation between defendant and M.T. *See* doc. 18 at 1. Defendant claims he is "not challenging the facts alleged in the indictment." Doc. 54 at 2. But saying it doesn't make it so. In reality, defendant's entire argument requires the Court to erase the line between complaint and indictment.

Looking at the indictment -- and *only* the indictment -- the Court readily finds it sufficient. It contains all the elements of the charged offenses, notifies defendant of the charges against him, and thus enables him to use any "judgment under the indictment as a bar against double jeopardy." *Lang*, 732 F.3d 1246, 1247 (11th Cir. 2013). Hence, defendant's motion to dismiss counts I and II (doc. 44), should, like his motion to dismiss count I (doc. 40), be **DENIED**.[8]

---

[8] Defendant also argues that the First Amendment's Free Speech Clause and Fifth Amendment's Due Process Clause require the Court to dismiss his indictment. *See* doc. 44 at 13-16. These arguments too fall when faced with the language of the indictment, which says only that defendant, with the intent to extort M.T., demanded money for keeping silent about damaging information about M.T. Doc. 18 at 1. That conduct, which the Court must assume to be true, is neither protected speech, *see Watts v. United States*, 394 U.S. 705, 707 (1969) (true threats, such as extortionate threats, are not protected by the First Amendment), nor so far afield of anything else

**SO REPORTED AND RECOMMENDED** this 18Th day of August, 2015.

／s／ G. R. Smith
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**

---

ever prosecuted under § 875(d) and the Hobbs Act that defendant had no warning that his "conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997) (the "touchstone" of due process gave a defendant notice that his conduct might be criminal). Defendant's constitutional claims thus also fail.